UNITED STATES (JACOB v.). See Case No. 7,157.

# Case No. 15,460.

### UNITED STATES v. JACOBI.

[1 Flip. 108; 14 Int. Rev. Rec. 45–62; 3 Chi. Leg. News, 345; 4 Am. Law T. Rep. U. S. Cts. 148; 1 Leg. Op. 161; 6 Am. Law Rev. 183.] [1]

District Court, W. D. Tennessee. May, 1871.

CONTEMPT—INDICTMENT—REMOVAL OF PRISONER.

1. Within the meaning of section 33, of the judiciary act [1 Stat. 91], contempt is a crime against the United States.

[Cited in Re Manning, 44 Fed. 276.]

2. Any willful contempt, which the United States courts may deal with, may be regularly prosecuted by indictment. Contempt of court is a specific criminal offense. It is punished sometimes by indictment, and sometimes in a summary proceeding.

[Cited in U. S. v. Brawner, 7 Fed. 88; Re Litchfield, 13 Fed. 868.]

3. No warrant for the removal of the accused can in any case be issued until he has been arrested and imprisoned. If he offer satisfactory bail, it is his right, under section 33 of the judiciary act, to be discharged on bail. Semble, that the proper practice is to apply for warrant of arrest to the officer designated by the statutes to grant such in other crimes.

[Cited in U. S. v. Haskins, Case No. 15,322; U. S. v. Rogers, 23 Fed. 661; Re Dana, 68 Fed. 890.]

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 6 Am. Law Rev. 183, contains only a partial report.]

H. E. Hudson, U. S. Dist. Atty., for the United States.

The records do not show who represented defendant

WITHEY, District Judge. There has been presented to me, while discharging the duties of district judge of West Tennessee, a certified copy of the record of proceedings had in the United States circuit court of the Eastern district of Arkansas, and a writ of attachment therein against Theodore Jacobi in a case of willful contempt for disobeying the subpœna of that court issued in a civil suit. I am asked to issue a warrant to arrest and remove Jacobi to the Eastern district of Arkansas, he now being in this district.

This application is based on section 33 of the judiciary act of 1789 (1 Stat. 91; Brightly's Dig. U. S. 90, § 1), which provides that "for any crime or offense against the United States, the offender * * * may be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by this act has cognizance of the offense. And if such commitment of the offender * * * shall be in a district other than that in which the offender is to be tried, it shall be the duty of the judge of that district where the delinquent is imprisoned, seasonably to issue, and of the marshall of the same district to execute, a warrant for the removal of the offender * * * to the district in which the trial is to be had."

Is a willful contempt of a court of the United States "any crime or offense against the United States." within the meaning of section 33 of the judiciary act? If not, Jacobi cannot. within the language of that section, "be arrested and imprisoned or bailed * * * for trial before such court of the United States, as by this act has cognizance of the offense," nor can the judge of this district issue a warrant for his removal to another district, even if Jacobi had been here imprisoned by a committing magistrate.

That a willful contempt is an offense at common law, within no limited or restricted sense. but in the general sense of crime, cannot be successfully questioned. In the 4th volume of Blackstone (page 279, entitled "Summary Convictions"), contempt is treated as a crime. The author says: "We are next * * * to take into consideration the proceedings in the courts of criminal jurisdiction in order to the punishment of offenses." He treats of these proceedings as of two kinds, "summary and regular." Under summary proceedings are ranked attachments for contempt of court. At page 286, it is said "the process of attachment for these and like contempts must necessarily be as ancient as the laws themselves. For laws without a competent authority to secure their administration from disobedience and contempt would be vain and nugatory. A power, therefore, in the supreme courts of justice to suppress such contempt by an immediate attach-ment of the offender, results from the first principles of judicial establishment and must be an inseparable attendant upon every superior tribunal."

Again, at page 124. it is said: "Contempts against the king's palaces or courts of justice have always been looked upon as high misprisions." Misprisions, according to the English common law, are all such high offenses as are under the degree of capital, but nearly bordering thereon. 4 Bl. Comm. 119. See, also, on the subject of contempts being crimes and prosecuted as crimes, Crosby's Case, 3 Wils. 188; Williamson's Case, in 26 Pa. St. 18, 19; U. S. v. Duane [Case No. 14,997]; Mullee's Case [Id. 9,911].

But as there are no common law offenses against the United States; in other words, as no crimes against the United States exist by force of the common law, the legislative authority of congress must first make the doing or omission of an act, a crime. It would seem from this that the power of the federal courts to deal with contempts, in the absence of any statutory authority of congress, would exist merely as a means to enforce obedience to lawful mandates of the courts in a jurisdiction; being exercised, not however, as a crime against the United States, but as the courts of chancery in England, prior to the introduction of sequestrations in the several stages of a cause, enforced their decrees by process, in the nature of contempt; acting only in personam and not in rem. 4 Bl. Comm. 287, 288.

That the courts of the United States could deal with contempt without any act of congress authorizing it. as an incident of their establishment, was distinctly held in Ex parte Kearny, 7 Wheat. [20 U. S.] 38, and U. S. v. Hudson, 7 Cranch [11 U. S.] 32.

What is to be the construction of the 17th section of the judiciary act, in which act is section 33 already given, in view of the fact that when the judiciary act was passed, contempt was recognized as a common law offense? Section 17 reads: "All the said courts of the United States shall have power * * * to punish by fine or imprisonment. at the discretion of said courts, all contempts of authority, in any cause or hearing before the same." 1 Stat. 83; 1 Brightly's Dig. U. S. 189, § 1. It will be found on examining the criminal statutes passed by congress that it is seldom that a crime is declared to be such in terms. On the contrary, very many of the statutes under which persons are constantly tried for crimes against the United States, simply impose fine or imprisonment, or both in the discretion of the court, for the particular act. This is precisely what congress has done by the 17th section of the judiciary act, viz.: given the courts the power to punish by fine or imprisonment. at their discretion, all contempts of authority. It is a general and sound rule of criminal law, that whenever the legislative power has declared an act or omission. of an act to be

punishable by fine or imprisonment, that act done or omitted willfully is a crime, and may be punished by indictment.

"A crime," says Bouv. Law Dict. 384, "is an act committed or omitted in violation of a public law, either forbidding or commanding it." The United States courts are authorized to issue subpœnas for witnesses, enjoin parties, etc. If the witness disobeys such lawful command, or if a party disobeys an injunction lawfully issued, in either case he has violated the law of congress which confers such authority on the court. Congress has said, for any such disobedience the party may be punished by the court whose authority has been set at naught in any cause or hearing before it, by fine or imprisonment, at its discretion.

The effect of the legislation by congress on the subject is, that witnesses and parties shall obey the commands of the court lawfully made, and, if they disobey, they shall be punished by fine or imprisonment. Hence, I hold that section 17 makes contempt of court a crime against the United States. Now, that it is within section 33 a crime for which the party may be arrested and imprisoned, or bailed, I do not doubt. The fact that the mode of trial in contempt cases is summary, by attachment, etc., and therefore peculiar or different from trials for most other crimes, is not at all significant of whether contempt is a crime or offense within the meaning of section 33 of the judiciary act. This section was clearly designed to embrace, as its language does, "any crime or offense against the United States," and for which the offender may be "arrested and imprisoned, or bailed, * * * for trial before such court of the United States as by this act has cognizance of the offense."

Although the ordinary process of arrest in these cases is by attachment, and the mode of trial summary, I do not doubt that the offender may be prosecuted without attachment and without interrogatories in the summary way, viz.: by warrant of arrest on complaint, in the ordinary and regular mode of proceeding against offenders as prescribed by section 33. He may be arrested, and when brought before the officer, and an examination is had, may be committed or bailed, and may be thereafter prosecuted through the form of a criminal information or indictment, as in the case of other misdemeanors.

In Hollingsworth v. Duane [Case No. 6,-616], it is remarked, in reference to contempts to inferior jurisdictions, that for all contempts not committed in the presence of the court and punished instanter—in which cases only can such courts punish summarily for contempt—there is no other mode of punishment than by indictment. The supreme court of Pennsylvania, in Williamson's Case, supra, say: "It must be remembered that contempt of court is a specific criminal offense. It is punished sometimes by indictment, and sometimes in a summary proceed-

ing, as it was in this case. In either mode of trial the adjudication against the offender is a conviction."

I do not doubt, as I have said, that any willful contempt, which the United States courts may deal with at all, may be regularly prosecuted by indictment, and that under either mode of proceeding section 33 is ample to authorize the arrest of Jacobi and his removal.

To some extent, I remark, the practice in some districts has been, in contempt cases where the offender had absconded from the district in which his disobedience occurred, to proceed, under section 33, for a crime against the United States. I see no other way to reach an offender thus situated, and it requires no strained construction to say that section 33 is ample to cover all such cases. But while I hold willful contempt of a federal court to be an offense against the United States, and that the offender may be proceeded against by arrest and be imprisoned, if not bailed, I am at the same time of opinion that no warrant for the removal of the accused can in any case be issued until the accused has been arrested and imprisoned. If the accused offers satisfactory bail, it is his right, under section 33, to be discharged on bail. The section says: "And upon all arrests in criminal cases bail shall be admitted, except when the punishment may be death."

My opinion is, also, that the certified copy of the proceedings of contempt and of the attachment are sufficient to justify, not only the United States in making the necessary complaint, but to authorize the issuance of a warrant of arrest by the proper officer, precisely as a certified copy of an indictment would be in any other case of crime. If the accused does not avail himself of his right to give bail to appear and answer before the circuit court of Arkansas at a time to be fixed by the examining magistrate or commissioner, the papers afford sufficient evidence to authorize his imprisonment. When committed, the judge of the district would be authorized to issue a warrant to remove. My views on this subject are to some extent expressed in the case of U. S. v. Shepard [Case No. 16,273]. In that case, I say, after referring to the clause of section 33 of the judiciary act, in reference to the removal of offenders: "By consulting the previous portion of this section in connection with the clause I have read, it will appear that the warrant of removal is authorized only where the offender has been first arrested and committed for want of bail. In a bailable case the statute does not seem to contemplate or warrant removing a person from one district to another in the summary way pursued in this case. He is first to be taken before the proper officer, who is to examine as to the crime alleged against the accused." "If there is not probable cause of his guilt, he is entitled to be discharged; whereas, if there

be found reasonable cause for holding the accused to answer, upon tendering sufficient bail he is entitled to his discharge from arrest. Only on failure to give bail in a bailable case can he be committed." See, also, Mr. Justice Miller's opinion in Re Bailey [Case No. 730]. That learned judge says: "The section which I have quoted (section 33) * * * does not, in express terms, say that a person charged with an offense against the laws of the United States must have an examination in the district where he is arrested, though the offense be committed in another state. It does not in so many words say that he shall undergo an examination at all. The language is that he may be arrested and imprisoned or bailed. But this is to be done according to the usual mode of proceedings against such offenders in the state where he is arrested." "It would be a waste of time to show that an imprisonment or order for bail is never made in any state without previous examination. Nor would any well-informed lawyer hesitate to hold that the act of congress in question was not intended to authorize imprisonment without such preliminary examination by the committing magistrate as should satisfy him that there was enough evidence of the prisoner's guilt to justify a reference of the case to a grand jury of the proper district."

What I have said of the sufficiency of the evidence afforded by a certified copy of the papers in this application on the party being brought up for examination, concerning the charge, is intended, of course, as saying that, in my opinion, they would afford prima facie evidence of the truth of the charge, and, in the absence of other evidence, justify holding the party to answer.

As this application is for a warrant to arrest and remove as the first step, it must be denied. When the proceedings indicated as necessary to precede a warrant to remove have been had, and should the delinquent be imprisoned, an application to me while discharging the duties of the district judge of West Tennessee for such warrant will be successful.