**UNITED STATES v. JOHNSON.**
Cr. No. 9249.

District Court, D. Oregon.
Oct. 24, 1945.

J. Robert Patterson, Asst. U. S. Atty., of Portland, Or., for plaintiff.

William M. Langley, of Portland, Or., for defendant.

McCOLLOCH, District Judge.

There is more involved here than just the individual defendant's welfare.

Here is a colored man who was brought out from Washington, clear across the country, to work in war industry. He was brought here in 1943 by the Kaiser people and stayed on the job faithfully, so far as we know, until 1945, March of this year, worked for the Kaiser people all the time and sent half of his wages back regularly, until he lost his employment. He didn't bring his family with him, and now that the war has ended he has not kept up their support. So these criminal proceedings for non-support have been brought, where he formerly lived, and he has been indicted on two counts, one for non-support of his wife and the other for non-support of his children.

There were several reasons why I delayed action in this case. One was, I could see this was bound to be a forerunner of similar cases, and I am advised there is at least one other case pending before our Commissioner from the District of Columbia, seeking removal of a colored man who came to Oregon under similar circumstances and who, it is charged, neglected to maintain his family afterward. And I take it that there must be other similar cases in the other Pacific Coast states, because, while we had an influx to Oregon of probably twenty thousand colored people, brought in or attracted here by war work, increasing our colored population I believe about ten times, the same percentages I am told apply to the other Pacific Coast cities, and of course the numbers would be much greater in the other cities because the initial colored population was much greater. So there is something of a social problem here involved, as well as a legal question.

We have always felt in this court that there was discretion, under the existing practice, allowed to us by the decisions on removal matters.[1] The extent of the discretion may be arguable. But I know my practice has been to stop and make

[1] The cases on all phases of the removal question have been collected by Alexander Holtzoff, now Justice Holtzoff, in 4 F.R.D. 455 (1945).

inquiry whenever special facts were disclosed that seemed to make questionable the propriety of removal, especially where such long distances were involved and the expense to the Government was great. But this case involves more than dollars and cents.

I was struck at the outset by the nature of the charge. The defendant had been here for two years, had come to Oregon for a worthy purpose, with the consent of his family, and had maintained them from this point. Now, after he has been out of the jurisdiction where his family lives, for that long period, he is charged with having committed a crime under the laws of that jurisdiction. That in itself presented an unusual situation, because, ordinarily, to commit a crime within a jurisdiction a man must be personally present there. There are exceptions, of course, like firing a gun over a state line. There are exceptions arising under the Federal Conspiracy Statute, and there are exceptions which arise through the use of interstate commerce, whereby a crime may be consummated at a distant point. But here was an alleged crime, in its essence one of omission rather than commission. Here was a man on one Coast, charged with having committed a crime three thousand miles away on the other Coast, and I wondered to myself, how the law dealt with that kind of a problem, what the authorities were.

■ My first inquiry was in the field of extradition.. It is clear that if this charge had originated in any one of the states bordering on the District of Columbia,—if it originated, for instance, in Maryland, if

this man had lived in Maryland, rather than the District of Columbia, and had come out here under the same circumstances, and two years later this difficulty arose and the charge of non-support were filed against him in Maryland under Maryland's laws and he were found here in Oregon, he could not be extradited to Maryland; that is perfectly clear, for the reason that only a fugitive from that state can be extradited, and a man can't be a fugitive from a state where he was not physically present, within the time covered by the charge. Hyatt v. People of State of New York ex rel. Corkran, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657.

My next inquiry was, whether, by analogy, the law that applies between states applied to Federal removal as between districts, and I found that, due to the wording ·of the Federal Removal Statute,[2] that question had been resolved differently than it had been resolved between the states.

Roughly, the Federal Removal Statute says—I don't have it before me—that one who has committed an offense against the United States may be removed from the place wherever found to the place of trial. There is nothing in the Statute requiring a defendant to be a fugitive from the district where the trial is to be held, or where the crime is alleged to have been committed.

■ That leaves, then, this question in the case: Whether the District of Columbia statute,[3] under which this indictment was returned, whether its proper construction covers a case like this, where a defendant was without the district and had been for some time, legitimately so, had

[2] The Removal Statute:

"For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any United States commissioner, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any State where he may be found, and agreeably to the usual mode of process. against offenders in such State, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. * * * Where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had." 18 U.S.C.A. § 591.

[3] "Any person in the District of Columbia who shall, without just cause, desert or wilfully neglect or refuse to provide for the support and maintenance of his wife in destitute or necessitous circumstances, or any person who shall, without just excuse, desert or wilfully neglect or refuse to provide for the support and maintenance of his or her minor children under the age of sixteen years in destitute or necessitous circumstances, shall be deemed guilty of a misdemeanor. * * * " Tit. 22, District of Columbia Code (1940 Edition) Sec. 903.

not left there under a cloud, was not delinquent in any respect when he did leave, left there to serve a worthy national purpose, long after he left found himself in domestic difficulties through a charge of non-support—whether the District of Columbia statute rightly construed covers such a case.

You pointed out, Mr. Patterson, that there was a difference in the language of the two parts of the act, one applying to the wife, and one to the children.

Mr. Patterson: The one that applies to the wife says he has to be in the District.

The Court: Well, that is the way you put it. The language of the statute, or the section of the statute applying to the wife, is "any person in the District of Columbia"; and as you put it that would require him to be in the district at the time of the alleged non-support. That view of it would dispose of the first count here, which has to do with the wife.

You pointed out that the second part of the Act, which has to do with non-support of the children, did not have the language requiring the person to be in the district; merely saying in general terms that one who fails to support his children is subject to punishment, without saying anything about whether the one charged had to be in the district, or was in the district at the time. The second part of the Act is silent on that.

The question left is whether the statute was intended to cover extraterritorial situations; and here, then, is where I find myself, as I see our duty, under existing removal practice; that it is up to me to apply my view of the proper construction of the statute. So far as I know, the courts of the District of Columbia have not ruled on the point.

There is a view held in some quarters, I have heard, that a judge on removal proceedings may not go as far as I am going with this case; that when an indictment is presented to him, fair on its face, that is conclusive and he must order removal.[4] That is the rubber-stamp theory. We find that running through quite a few Government departments these days. It ran very strongly through certain wartime administrative agencies. Compare Justice Murphy dissenting in Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 510, 63 S.Ct. 339, 87 L.Ed. 424. The view is that a judge

---

[4] See Rule 3 pending Rules of Criminal Procedure.

A special committee appointed by the Board of Governors of the Oregon State Bar recommended against the proposed Rule.

A special committee appointed by the Board of Governors of the State Bar of California also opposed the Rule.

The report and recommendation of the Los Angeles Bar Association and of the Lawyers' Club of Los Angeles is worthy of reprint in full:

In this section provision is made for mandatory removal upon a showing of an indictment in the demanding district and proof of identity. The effect of this is to remove the present right of the defendant to' rebut the prima facie showing of an indictment. The right to offer evidence in rebuttal and to have such evidence judicially considered is now well established by the case of [United States ex rel.] Kassin v. Mulligan, 295 U.S. 396 [55 S.Ct. 781, 79 L.Ed. 1501].

*It is pertinent to note that many efforts have been made to foreclose the defense in removal proceedings. Several bills sponsored ·by the Attorney General were introduced in Congress in 1900 and thereafter until about 1925. All of these bills were defeated.*

(Italics added) In the case of Tinsley v. Treat, 205 U.S. 20 [27 S.Ct. 430, 432, 51 L.Ed. 689], the government contended that an indictment was conclusive cause for removal. The Supreme Court refused the proposition and said "no such removal should be summarily and arbitrarily made. There are risks and burdens attending it which ought not to be needlessly cast upon any individual. * * * We must never forget that in all controversies, civil or criminal, between the government and an individual, the latter is entitled to reasonable protection."

Involved here is a radical change in a procedure which has stood unchanged since 1789. The right of a defendant to be heard in a removal proceeding has been upheld by the courts and by Congress against many efforts to withdraw that right. Since 1789 a body of case law has grown, so that today the rights of the defendant are protected without prejudice to the government in a case properly instituted and fairly prosecuted. The defendant is protected from transportation to a distant place to answer charges that are trivial, instituted by caprice or malice or without regard to jurisdictional foundation.

must rubber-stamp every application for removal where an indictment is presented that is fair on its face. He may not make any inquiry behind the indictment as to whether or not, for instance, the defendant committed any crime, as charged, in the district seeking removal, or, as in this case, whether he was present in the district.

Because criminal statutes are to be strictly construed, and because there is no clear cut authority that I have been able to find that gives extraterritorial application to a criminal non-support statute, and because there is at least one authority by a strong court, Ex parte Kuhns, 1913, 36 Nev. 487, 491, 137 P. 83, 50 L.R.A.,N.S., 507, that a man could not commit the crime of non-support in another state without being personally present there, I intend to discharge the defendant. In the absence of any prior construction of this statute by the courts of the District of Columbia, I hold that the crime of non-support was not committed by this defendant in the District of Columbia between January 1 and July, 1945, as alleged in the indictment, because during none of that time was the defendant in the District of Columbia. And in so holding I claim the right, contrary to the rubber-stamp theory, to construe the statute and go behind the indictment and deal with the facts as they really are, on the authority of Tinsley v. Treat, 205 U.S. 20, 27 S.Ct. 430, 51 L.Ed. 689, and the cases which have since followed that decision, although with some modification of its constitutional doctrine. United States ex rel. Hughes v. Gault, 1926, 271 U.S. 142, 46 S.Ct. 459, 70 L.Ed. 875, United States ex rel. Kassin v. Mulligan, 1935, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501.

The second headnote of Tinsley v. Treat, which correctly reflects the body of the opinion, reads:

"While in a removal proceeding * * *, an indictment constitutes prima facie evidence of probable cause it is not conclusive, and evidence offered by the defendant tending to show that no offense triable in the district to which removal is sought had been committed is admissible, * * *."

In view of that statement by the Supreme Court, which has been the law of this country since 1907, I am wholly unable to understand how the draftsmen of the pending new Rules of Criminal Procedure could make the captious statement on page 140 of the preliminary draft:

"Some district courts in a removal hearing, even in a case based on an indictment, permit a defendant to introduce evidence to prove that he is not guilty. Such courts in effect review the action of the grand jury of the district in which the prosecution is pending, although the court in the latter district has no such power."[5] (It is fair to say that this statement was toned down in notes to later drafts).

The defendant is discharged and the petition for removal is denied.[6]

---

[5] This is said to be the day of the Appellate Courts. It is not without significance that no District Judge was a member of either the committee for the formulation of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, or the committee that formulated the pending Rules of Criminal Procedure. Judge J. F. T. O'Connor of Los Angeles has shown that of twenty-three matters considered by the Conference of Senior Circuit Judges at its September session, 1944, twenty-one concerned the District Courts solely or primarily.

[6] The notes and some of the citations have been added since the opinion was rendered.