UNITED STATES v. MILLER et al.

District Court, W. D. Kentucky, at Owensboro.

Nov. 24, 1936.

Bunk Gardner, U. S. Atty., and Oldham Clarke and Eli H. Brown, III, Asst. U. S. Attys., all of Louisville, Ky., for the United States.

Beckham A. Robertson, of Owensboro, Ky., for defendants.

HAMILTON, District Judge.

The defendants have demurred to the first and second counts of the indictment herein on the ground that no public offense is charged. The first count of the indictment charges the defendants with unlawful traveling in interstate commerce from Nebo in the state of Kentucky to the states of Indiana, Ohio, West Virginia, Pennsylvania, New York, Tennessee, North Carolina, and South Carolina, with intent to avoid prosecution for robbery, said to have been committed by the use of deadly weapons, the fruits thereof being $9,500 in money of the United States.

The second count of the indictment charges the defendants with transporting, and aiding and abetting each other in transporting in interstate commerce from Nebo in the state of Kentucky to the states of Indiana, Ohio, West Virginia, Pennsylvania, New York, Tennessee, North Carolina, South Carolina, Georgia, and Texas $9,500 of money and securities of the United States which had theretofore been stolen from G. B. Gooch in the state of Kentucky. The first count of the indictment is laid under the Act of May 18, 1934, c. 302, 48 Stat. 782, 18 U.S.C.A. § 408e, which makes it an offense for any person to move or travel in interstate or foreign commerce with intent to avoid prosecution for murder, kidnapping, burglary, robbery, mayhem, rape, assault with a dangerous weapon, or extortion accompanied by threats of violence, or attempt to commit any of the enumerated offenses under the laws of the place from which he flees, or to avoid giving testimony in any criminal proceedings in such place in which the commission of a felony is charged.

The second count is laid under the Act of May 22, 1934, c. 333, § 3, 48 Stat. 794, 18 U.S.C.A. § 415, which provides whoever shall transport or cause to be transported in interstate or foreign commerce any goods, wares, or merchandise, securities or money of the value of $5,000 or more, theretofore stolen or taken feloniously by fraud or with intent to steal or purloin, knowing the same to have been so stolen or taken, etc.

The sole ground of demurrer is the unconstitutionality of the respective acts under which the offenses are charged. It is claimed the statute supporting the first count is void because of uncertainty, and as to this statute and the supporting one for the second count, that neither is a proper exercise of the power to regulate commerce among the states under section 8, article 1 of the Constitution, and in violation of article 4, section 2, cl. 2 thereof, and the Tenth Amendment.

Article 4, § 2, cl. 2 of the Constitution provides any person charged in any state with crime who shall flee from justice and be found in another state shall on demand of the executive authority of the state from which he fled be delivered up to be removed for trial to the state having jurisdiction.

Amendment 10 provides that powers not delegated to the United States by the Constitution, nor prohibited by it to the states

are reserved to the states respectively, or to the people.

Article 1, § 8, provides that the Congress shall have power to regulate commerce among the several states and with the Indian tribes.

It is claimed by the defendants that the Act of May 18, 1934, has no application until there has first been a violation of a state law, and that it lays down no tests for determining when the state offense has been committed, and for this reason it is indefinite and no person charged under it can with reasonable certainty determine when it is applicable to him. The act makes it unlawful for any person to move or travel in interstate or foreign commerce from any state to avoid prosecutions for the crimes enumerated in the section. It is not made an offense under this section to flee from a prosecution of an offense against the laws of the United States, but solely for one punishable under a state, district, or territorial law.

█ Every criminal statute creating a new offense must be so explicit in its terms as to inform those who are subject to penalties under it what conduct on their part will render them liable. A statute so vague in its terms that men of ordinary intelligence must guess at its meaning and differ as to its application violates every essential element of justice and fair play, and if the statute here involved is of such indefiniteness, it is void.

█ A statute is not void even though offenses denounced by it are not defined, if such offenses were known to the common law. The statute relating to the first count of the indictment makes it an offense for a person to travel in interstate commerce with the intent to avoid prosecution for murder, kidnapping, burglary, robbery, mayhem, rape, assault with a dangerous weapon, or extortion accompanied by threats of violence, or an attempt to commit any of the foregoing offenses under the laws of the state from which he flees, or to avoid giving testimony in any criminal proceedings in such place in which the commission of a felony is charged. All of the crimes stated in the statute were well known offenses at common law, and to "avoid giving testimony" is an expression of well-defined meaning to any person of average intelligence. Flight from punishment is as old as the law. No person of ordinary intelligence would have any difficulty in applying the statute to his acts. He would know

when he had committed any of the offenses denounced, and he would likewise know when his flight began for the purpose of avoiding detection or prosecution.

Before a conviction could be had under the statute, the burden would rest on the United States to establish beyond a reasonable doubt that the defendant had committed in some one of the states or territories the offense denounced in the statute, and that he was subject to prosecution in the state where the offense was committed and had fled therefrom to avoid prosecution. Any person with a reasoning mind would know the various elements required before the statute applied to him.

The statute is not void for indefiniteness or uncertainty. Hygrade Provision Company v. Sherman, 266 U.S. 497, 499, 45 S.Ct. 141, 69 L.Ed. 402; Nash v. United States, 229 U.S. 373, 376, 33 S.Ct. 780, 57 L.Ed. 1232; Waters-Pierce Oil Company v. Texas, 212 U.S. 86, 109, 29 S.Ct. 220, 53 L.Ed. 417; Miller v. Strahl, 239 U.S. 426, 434, 36 S.Ct. 147, 60 L.Ed. 364; Sligh v. Kirkwood, 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835; Coomer v. United States (C.C.A.) 213 F. 1, 5; Omaechevarria v. Idaho, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763.

█ Each of the statutes involved is a proper exercise of the regulation of commerce among the states. Our changing civilization, especially the system of transportation produced thereby, requires the federal government to declare many acts federal offenses which formerly would be left to the states without federal aid or interference.

It is now possible, and crime is often committed in one state and the participants within a few hours are entirely out of reach of state authorities. The right of extradition guaranteed to the states by the federal government becomes too slow as a vehicle for swift punishment of criminals, and oftentimes any punishment at all.

█ No state has the power to punish a criminal for coming from another state to it by reason of the fact he had committed a crime in the former. The Federal Constitution safeguards the privileges and immunities of a citizen, and as a part thereof, protects his right to pass freely from one state to another. See State v. Cutshall, 110 N.C. 538, 15 S.E. 261, 16 L.R.A. 130; Crandall v. State of Nevada, 6 Wall. (73 U.S.) 35, 18 L.Ed. 745; Arkansas v. Kansas, etc., Coal Company (C.C.) 96 F. 353, 365;

Henderson v. Mayor of City of New York, 92 U.S. 259, 272, 23 L.Ed. 549; Doyle v. Continental Insurance Co., 94 U.S. 535, 541, 24 L.Ed. 152.

 In the exercise of its plenary authority to protect interstate and foreign commerce, Congress may declare punishable any offense which interferes with, obstructs, or prevents such commerce, or makes it a vehicle for crime. It has made punishable the interstate transportation of lottery tickets, of obscene literature, diseased cattle, impure food and drugs, transportation for purposes of prostitution or debauchery, and kidnapping. It may make a crime the use of interstate commerce by a fleeing criminal in order to aid the states in the apprehension of the guilty and make certain, swift, and sure the punishment of those who commit crimes against the states. If such power be not lodged in the Congress, then the unity of our people to deal with crime is destroyed and the states crippled in punishing those who violate their laws and flee to another state. See Wilson v. United States, 232 U.S. 563, 34 S.Ct. 347, 58 L.Ed. 728; Athanasaw v. United States, 227 U.S. 326, 33 S.Ct. 285, 57 L. Ed. 528, Ann.Cas.1913E, 911; Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522; Clark v. United States (C. C.A.) 211 F. 916; Champion v. Ames, 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492; Weber v. Freed, 239 U.S. 325, 36 S.Ct. 131, 60 L.Ed. 308, Ann.Cas.1916C, 317; Kelly v. United States (C.C.A.) 76 F.(2d) 847.

The two acts here in question are proper instruments for the protection and keeping pure from criminal defilement the commerce of the United States among the states and territories. Neither of them violates the Tenth Amendment. Their enforcement neither impedes nor interferes with the right of any state to punish those violating its laws, nor interferes with the right of extradition of a criminal from a state to which he has fled to one where the crime was committed.

If the state has the prisoner in custody for the purpose of trial, or for the purpose of extradition, the federal government would await the disposition of the case in the state court under the well-known principle of comity between the federal and state governments, and if the federal government had first acquired jurisdiction by taking custody, the state, for the same reason, would await the disposition of the case in the federal court and the service of sentence if imposed. The unity of purpose between the federal and state governments to enforce the criminal laws of each should not be discouraged by the courts, and no law to this end should be stricken down unless undoubtedly unconstitutional.

The demurrer to the indictment will be overruled.