# Authority for the Removal of Fugitive Felons Apprehended Under 18 U.S.C. § 1073

An individual charged with a violation of the Fugitive Felon Act, 18 U.S.C. § 1073, which makes it a federal offense to travel interstate to avoid a state felony prosecution, among other things, may be "prosecuted" only in the federal judicial district in which the original state crime was committed, or from which he fled, and "only upon formal approval in writing by the Attorney General or an Assistant Attorney General of the United States, which function of approving prosecutions may not be delegated."

Under Rule 40 of the Federal Rules of Criminal Procedure, an individual who is charged with a federal offense in one district and is apprehended in another may be brought back before the court in which the federal charges are pending against him. A court's duty to order removal under Rule 40 is not dependent upon a subsequent federal prosecution.

The Department of Justice has interpreted the term "prosecution" in the Fugitive Felon Act to include all steps in the federal criminal process after a fugitive has been taken into federal custody, including removal to the district in which the federal charges against him are pending, pursuant to Rule 40. The Department has also determined that the formal approval required by 18 U.S.C. § 1073 may not be given if the federal prosecution is not to be subsequently pursued. Although nothing in the legislative history of the Fugitive Felon Act or relevant case law mandates this interpretation, it is not clear whether a court would require formal written approval before issuing a Rule 40 removal order.

Federal removal under Rule 40 has been upheld against a Fugitive Felon Act defendant's claim that he was constitutionally entitled to extradition under state law. However, the Fugitive Felon Act was not intended to supplant state extradition procedures, and federal removal procedures should not be used to accomplish a Fugitive Felon Act defendant's return for prosecution or other appropriate disposition by the State. The policy considerations involved in making such a determination underscore the wisdom of the Department's requirement for formal approval for Rule 40 removal of Fugitive Felon Act defendants.

The cost of transporting a Fugitive Felon Act defendant pursuant to a court order under Rule 40 may be paid out of funds appropriated for the authorized activities of the United States Marshal. All or part of the cost of transportation may voluntarily be borne by the State seeking the fugitive's return, although any monies received from a State must be deposited into the general fund of the Treasury.

March 21, 1983

MEMORANDUM OPINION FOR THE DIRECTOR,
EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS

This memorandum responds to your request for our opinion whether a fugitive apprehended by federal authorities under the Fugitive Felon Act, 18

U.S.C. § 1073, may be removed to the jurisdiction from which he fled, pursuant to Rule 40 of the Federal Rules of Criminal Procedure, if the sole purpose of removal is to return the fugitive to the custody of authorities in the State from which he fled. In the event federal removal is permissible in this situation, you wish to know the permissible source of funds to pay its costs.

Your request derives from an exchange of correspondence between the United States Attorney for the Eastern District of Pennsylvania and the Assistant Attorney General, Criminal Division. In 1982, the United States Attorney for the Eastern District of Pennsylvania wrote to the Criminal Division requesting reconsideration of the policy set forth in § 9–69.450 of the United States Attorneys Manual (Manual). That section provides that "removal proceedings under Rule 40" shall not be instituted in § 1073 cases without the written approval of the Assistant Attorney General, Criminal Division.[1] The United States Attorney stated that "the present Department policy which prohibits routine federal removal of [§ 1073] defendants is inconsistent with the Department's emphasis on federal-state law enforcement cooperation, and inhibits effective law enforcement." The Criminal Division's position is that the Department's policy of requiring written approval before removal in § 1073 cases is mandated by § 1073 itself. Furthermore, such approval may not be given where the government does not intend to pursue a federal prosecution under that statute. This latter position, as more fully developed in discussions with Criminal Division staff, is based not only upon an interpretation of the federal government's authority under the Fugitive Felon Act, as amended in 1961, but also upon a concern that a federal defendant removed under Rule 40 for the sole purpose of facilitating a state prosecution could claim some constitutional or statutory entitlement to be processed under state laws governing interstate rendition.[2]

We have examined the legislative history of § 1073 and its judicial and administrative interpretations in the half century since its original enactment. Although we find no basis on which to disagree with the Criminal Division's position with respect to its policy of requiring written approval for removal in § 1073 cases, we do not believe the situations in which such approval may be given are limited to those in which a decision has been made to pursue a federal prosecution under that statute. For reasons more fully discussed below, we believe the federal government's broad authority under § 1073 to assist local

---

[1] The reference in § 9–69.450 to "removal proceedings under Rule 40" does not appear to reflect the 1979 amendments to Rule 40 of the Federal Rules of Criminal Procedure. *See* Pub. L. No. 96–42, 93 Stat. 326 (1979). The 1979 amendments abolished the "warrant of removal" by which a federal court previously directed return of a defendant arrested in "a distant district," *i.e.,* on a warrant issued in another State at a place 100 miles or more from the place of arrest. Although a warrant of removal is no longer required under Rule 40 in order to accomplish the transfer of prisoners in federal custody from one district to another, the term "removal" is used throughout this memorandum to indicate the judicial procedure whereby a federal defendant is returned to the jurisdiction of the court in which the federal charges against him are pending.

[2] As we understand it, the Criminal Division's position is based upon its interpretation of federal authority under § 1073, and not upon some independent limitation upon a court's authority under Rule 40 to order removal if federal charges are not to be pursued.

law enforcement agencies in the apprehension of fugitive felons or witnesses permits it to return a fugitive to the jurisdiction from which he fled for prosecution or other appropriate disposition by the State. Furthermore, a defendant subject to removal under Rule 40 has no federal constitutional or statutory right to be extradited under state law. Federal removal should, however, be sought only in those situations where existing interstate rendition procedures cannot be relied upon to bring a fugitive to justice.

Finally, the cost of transporting a federal § 1073 defendant pursuant to a federal court order under Rule 40 may be paid from funds appropriated for the authorized activities of the United States Marshal responsible for carrying out the court's order. Although all or part of this cost may be reimbursed by the State seeking the fugitive's return, any monies received from the State must be deposited directly into the general fund of the Treasury.

## I. Section 1073, Rule 40, and Current Departmental Practice in Fugitive Cases

### A. Section 1073

Section 1073 of Title 18, the so-called Fugitive Felon Act, makes it a federal offense to travel interstate for the purpose of avoiding a state felony prosecution, or custody or confinement after conviction, or to avoid giving testimony in a state criminal prosecution or investigation.[3] Under the venue provisions of § 1073, an individual charged with a violation may be "prosecuted" only in the federal judicial district in which the original state crime was committed, or from which he fled, and "only upon formal approval in writing by the Attorney General or an Assistant Attorney General of the United States, which function of approving prosecutions may not be delegated."

---

[3] Section 1073 provides in full as follows:

§ 1073. Flight to avoid prosecution or giving testimony

Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which he flees, for a crime, or an attempt to commit a crime, punishable by death or which is a felony under the laws of the place from which the fugitive flees, or which, in the case of New Jersey, is a high misdemeanor under the laws of said State, or (2) to avoid giving testimony in any criminal proceedings in such place in which the commission of an offense punishable by death or which is a felony under the laws of such place, or which in the case of New Jersey, is a high misdemeanor under the laws of said State, is charged, or (3) to avoid service of, or contempt proceedings for alleged disobedience of, lawful process requiring attendance and the giving of testimony or the production of documentary evidence before an agency of a State empowered by the law of such State to conduct investigations of alleged criminal activities, shall be fined not more then $5,000 or imprisoned not more than five years, or both.

Violations of this section may be prosecuted only in the Federal judicial district in which the original crime was alleged to have been committed, or in which the person was held in custody or confinement, or in which an avoidance of service of process or a contempt referred to in clause (3) of the first paragraph of this section is alleged to have been committed, and only upon formal approval in writing by the Attorney General or an Assistant Attorney General of the United States, which function of approving prosecutions may not be delegated.

The Fugitive Felon Act has been sustained against constitutional challenge as a valid exercise of Congress' power to regulate interstate commerce, U.S. Const. art. I, § 8, cl. 3. *See, e.g., United States v. Bando,* 244 F.2d 833 (2d Cir. 1957); *Barker v. United States,* 178 F.2d 803 (5th Cir. 1949); *Hemans v. United States,* 163 F.2d 228 (6th Cir.), *cert. denied,* 332 U.S. 801 (1947); *United States v. Brandenburg,* 144 F.2d 656 (2d Cir. 1944); *Simmons v. Zerbst,* 18 F. Supp. 929 (N.D. Ga. 1939). The "general purpose of the Act was to assist in the enforcement of state laws," *United States v. Brandenburg,* 144 F.2d at 659, and its enforcement has been held not to violate the rights of the States under the Tenth Amendment. *See United States v. Miller,* 17 F. Supp. 65, 68 (W.D. Ky. 1936); *Lupino v. United States,* 185 F. Supp. 363, 368 (D. Minn. 1960). In Miller, the district court explained that

> [Congress] may make a crime the use of interstate commerce by a fleeing criminal in order to aid the states in the apprehension of the guilty and make certain, swift, and sure the punishment of those who commit crimes against the states. If such power be not lodged in the Congress, then the unity of our people to deal with crime is destroyed and the states crippled in punishing those who violate their laws and flee to another state.

17 F. Supp. at 68.

The venue provisions of § 1073 have been interpreted consistently with this general purpose of assisting state law enforcement:

> [T]he primary purposes of the venue section of § 1073 [are] to return the felon to the state where the original flight occurred in order to assist state officials in combating organized crime there, and to vindicate the federal interest in punishing acts committed in the judicial district where the original flight took place.

United States v. Thurman, 687 F.2d 11, 13 (3d Cir. 1982).

## B. Rule 40

Rule 40 of the Federal Rules of Criminal Procedure ("Commitment to Another District") describes the process whereby a person who is charged with a federal offense in one district, and is apprehended in another, may be brought back before the court in which the federal charges are pending against him. Rule 40(a) provides that "if a person is arrested in a district other than that in which the offense is alleged to have been committed, he shall be taken before the nearest available federal magistrate." Preliminary proceedings are held before the magistrate to determine that the apprehended fugitive is the individual named in the arrest warrant. If no indictment has been returned against him in the district where the warrant was issued, the magistrate must also determine that there is probable cause that he committed the crime for which he

is to be "held to answer in the district court in which the prosecution is pending."[4]

Rule 40 does not explicitly provide for a federal prisoner's transportation to the jurisdiction in which the charges against him are pending. If a defendant is admitted to bail, or released on his own recognizance, he is expected to present himself in the proper court at the proper time. If the magistrate has not approved the prisoner's release, however, he remains in the custody of the U.S. Marshal, who is responsible for seeing that the magistrate's removal order is carried out by transporting the defendant to the court in which the charges against him are pending. *See* 28 U.S.C. § 567; 28 C.F.R. § 0.111(j).

The procedural protections embodied in Rule 40 are not constitutionally required, but were developed as a matter of sound judicial policy. Unlike extradition, which involves a demand of one sovereign upon another, and implicates "the protection owed by a sovereign to those within its territory," *United States ex rel. Kassin* v. *Mulligan,* 295 U.S. at 396, 400 (1935), the process by which a federal defendant is returned for trial theoretically involves only a physical transfer from one judicial district to another within a single sovereign's territory. *See United States* v. *Godwin,* 97 F. Supp. 252, 255 (W.D. Ark.), *aff'd,* 191 F.2d 932 (5th Cir. 1951) ("the several judicial districts are not foreign to each other . . . but are simply convenient subdivisions . . . of one sovereign, the United States"). The purpose of Rule 40 is "to afford defendants reasonable protection, to safeguard them against improvident removal to a distant point for trial and to curb a defendant's opportunity for delay and obstruction of prosecution." *United States* v. *McCord,* 695 F.2d 823, 826 (5th Cir.), *cert. denied,* 460 U.S. 1073 (1983). *See also* Notes of the Advisory Committee on the 1945 Rules, 18 U.S.C. app. (1976).[5]

---

[4] Rule 40(a) provides in full as follows:

(a) Appearance Before Federal Magistrate

If a person is arrested in a district other than that in which the offense is alleged to have been committed, he shall be taken without unnecessary delay before the nearest available federal magistrate. Preliminary proceedings concerning the defendant shall be conducted in accordance with Rules 5 and 5 1, except that if no preliminary examination is held because an indictment has been returned or an information filed or because the defendant elects to have the preliminary examination conducted in the district in which the prosecution is pending, the person shall be held to answer upon a finding that he is the person named in the indictment, information or warrant. If the defendant is held to answer, he shall be held to answer in the district court in which the prosecution is pending, provided that a warrant is issued in that district if the arrest was made without a warrant, upon production of the warrant or a certified copy thereof.

[5] A federal court's authority and duty to effectuate a federal prisoner's commitment to the district in which federal charges against him are pending was first set forth in § 33 of the Judiciary Act of 1789. That section provided that "it shall be the duty of the judge of the district where the delinquent is imprisoned, seasonably to issue, and of the Marshal of the same district to execute a warrant for the removal of the offender, .. . to the district in which the trial is to be had." 1 Stat. 73, 91 (1789). This provision was later codified virtually unchanged in § 1014 of the Revised Statutes, and brought forward as § 591 of Title 18 of the United States Code (1940). It was repealed in 1948, three years after the Supreme Court's promulgation of Rule 40. In the early years of the Republic, it was the frequent practice for many district courts to issue a warrant of removal at the same time they issued a warrant of arrest. Upon his apprehension, the defendant was immediately returned to the district which had issued the warrant, and was thus effectively deprived of any hearing on the question of his removal. This practice was disapproved as a matter of judicial policy in such cases as *United*

Continued

79

Ordinarily, a court has no discretion to refuse to order removal, provided the requisite showing of identity and probable cause has been made. A removal order is not appealable. *See Galloway* v. *United States*, 302 F.2d 457 (10th Cir. 1962). Neither the sufficiency of the charges nor the constitutionality of the statute on which those charges are based can be raised in a removal hearing, though these may of course be challenged in the district court in which the charges are pending. *See United States* v. *Winston*, 267 F. Supp. 555 (S.D.N.Y. 1967); *Wright* v. *Cartier*, 10 F.R.D. 21 (D. Mass. 1950).[6]

A district court's authority and responsibility under Rule 40 and its statutory predecessors has never been held to depend upon the likelihood of subsequent federal prosecution. There is, for example, no requirement that an indictment be returned in the court to which removal is sought. *See Fetters* v. *United States*, 283 U.S. 638 (1931); *Greene* v. *Henkel*, 183 U.S. 249 (1902). This is evident on the face of the Rule, which requires that the government prosecutor establish probable cause only if no indictment has been returned or information filed in the district to which removal is sought. A court's duty to order removal is thus not conditioned upon the government prosecutor's declared willingness to seek an indictment and proceed to trial.

## C. *Departmental Enforcement Policy in § 1073 Cases*

The Department's policy on enforcement of § 1073 is set forth in the United States Attorneys Manual at §§ 9–69.400 et seq. As stated in the Manual, that

---

[5] (. . . continued)
*States* v. *Shepard*, 27 F. Cas. 1056 (E.D. Mich. 1870) (No. 16,273); *United States* v. *Jacobi*, 26 F. Cas. 564 (W.D. Tenn. 1871) (No. 15,460); and *United States* v. *Yarborough*, 122 F. 293 (W.D. Va. 1903). In these early cases, the courts recognized the importance of ensuring against mistaken identity or the absence of probable cause before ordering a defendant transported what might be hundreds of miles for trial. At the same time, however, they were unwilling to allow a defendant to force a trial on the merits at the removal stage, at best delaying his return and potentially frustrating prosecution entirely. In promulgating Rule 40 in 1945, the Supreme Court sought to strike a balance between these two concerns. *See generally* Holtzoff, *Removal of Defendants in Federal Criminal Procedure*, 4 F.R.D. 455 (1945); 8B *Moore's Federal Practice* ¶ 40.04 at 40–24 (1980).

As originally promulgated in 1945, Rule 40 distinguished between persons taken into federal custody in a "nearby district" (*i.e.*, on a warrant issued in the same State or within 100 miles) and persons arrested in a "distant district." Persons in the latter category could be returned for prosecution only upon the issuance of a "warrant of removal" by a district judge. No warrant of removal was necessary to return a person arrested in a "nearby district," who, like a state prisoner transported across the State for trial, was "transported by virtue of the process under which he was arrested." *See* Notes of the Advisory Committee on the 1945 Rules, Rule 40(a), 18 U.S.C. app. (1976). The 1979 amendments to Rule 40 abolished the "warrant of removal" and eliminated the distinction between the procedures applicable to arrest in "distant" and "nearby" districts. The Notes of the Advisory Committee on the 1979 amendments to the Rules explained that the preliminary proceedings previously applicable under Rule 40(a) to persons arrested in a "nearby" district were "adequate to protect the rights of an arrestee wherever he might be arrested," and would henceforth apply in all cases of commitment to another district. *See* Rule 40(a), 18 U.S.C. app. (1980).

[6] We are aware of two cases in which a district court declined to order removal on grounds that "special facts were disclosed that seemed to make questionable the propriety of removal." *United States* v. *Johnson*, 63 F. Supp. 615, 616 (D. Or. 1945); *United States* v. *Parker*, 14 F.R.D. 146 (D.D.C. 1953). In *Johnson*, the district court in Oregon refused to order the defendant's removal to the District of Columbia, declining to give the latter jurisdiction's criminal child support statute "extraterritorial application." In *Parker*, the court refused to order removal in a situation suggesting government harassment of the defendant.

policy is grounded in the theory that "the primary purpose of the [Fugitive Felon] Act is to permit the Federal Government to assist in the location and apprehension of fugitives from State justice." Accordingly, federal § 1073 charges are rarely pursued beyond the point of a fugitive's apprehension by federal law enforcement authorities.[7] Ordinarily, after the federal § 1073 prisoner has been taken before the nearest available federal magistrate pursuant to Rule 40(a), he is turned over to authorities in the State of arrest for extradition to the State from which he fled.[8]

Occasionally, however, a federal § 1073 prosecution will be pursued. In such a case, once preliminary proceedings under Rule 40 have been completed (or waived), the magistrate is requested to issue an order under Rule 40(a) directing that the apprehended fugitive be committed to the jurisdiction of the federal court in which the § 1073 charges are pending against him. It is this latter court which, under the venue provisions of § 1073, has jurisdiction over the federal criminal case.

Section 9–69.450 of the Manual restates the statutory requirement that § 1073 "prosecutions" may be "initiated" only upon the written approval of the Attorney General or an Assistant Attorney General:

> The 1961 amendment to the Act incorporated existing administrative practice by requiring approval by the Attorney General or Assistant Attorney General, in writing, before initiation of prosecution for unlawful flight to avoid prosecution, or custody or confinement after conviction, or to avoid giving testimony. Accordingly, under no circumstances should an indictment under the Act be sought nor an information be filed nor should removal proceedings under Rule 40, F. R. Crim. P., be instituted without the written approval of the Assistant Attorney General, Criminal Division.

Section 9–29.450, as interpreted by the Criminal Division, incorporates two legal conclusions: (1) The statutory term "prosecution" in the final paragraph

---

[7] We understand from the Criminal Division that there have been only two or three federal § 1073 prosecutions since 1961.

[8] Under Rule 40(a) it is the magistrate's responsibility to conduct preliminary proceedings to determine that the defendant is the person named in the federal arrest warrant, and that there is probable cause to believe that a violation of § 1073 was committed. *See supra* note 5. The fugitive "should remain in Federal custody or on bail or other conditions of release only so long as is necessary to permit his commitment to the authorities in the State where apprehended." *See* § 9–69.430. Asylum state authorities are generally willing to take custody of the fugitive, and the magistrate is willing to approve release from federal custody with this understanding. The demanding State may already have begun the extradition process by the time custody has shifted. The United States Attorney in the district where the federal complaint was filed then moves for its dismissal, and there is no further federal involvement. *See* § 9–69.431; *see also* 8B *Moore's Federal Practice,* ¶ 40.04 at 40–23 (1980).

The process of extradition is not always a smooth one. The Manual notes the possibility that the demanding State will be unwilling to extradite, or that extradition will be attempted but fail. *See* § 9–69.431. The same section also mentions the possible difficulties associated with the return of fugitive witnesses, to whom State extradition procedures do not apply. In addition, State courts may release the fugitive on low bail before the extradition process can be completed, providing a new occasion for interstate flight and federal involvement under § 1073.

81

of § 1073 for which written approval is required includes all steps in the federal criminal process after a fugitive has been taken into federal custody, including removal to the district in which the federal charges against him are pending; and (2) such approval may not lawfully be given if the federal prosecution under § 1073 is not to be subsequently pursued. Accordingly, the Criminal Division's position on the questions hereinafter considered is that § 1073 itself precludes removal of a defendant in a § 1073 case unless there has been a formal departmental decision, approved in writing by the Assistant Attorney General, to indict and bring to trial on the federal charges.

The text of § 1073 affords no clear guidance on the scope to be given the statutory term "prosecution," or more generally on the permissibility of using federal removal procedures to secure the return of § 1073 defendants in aid of a state prosecution. Accordingly, we must review the legislative history of § 1073 to determine whether the Criminal Division's position on these issues, as described above, is correct.

### III. Legislative History of § 1073

#### A. The 1934 Act

The Fugitive Felon Act, Pub. L. No. 73–233, 48 Stat. 782 (1934), was one of a series of thirteen major crime bills proposed by the Roosevelt Administration and passed by Congress in 1934. As originally enacted, the Act made it a federal offense to travel interstate to avoid prosecution for certain specified state felonies, or to avoid giving testimony in certain state criminal proceedings. The Act originated in a series of hearings on organized crime held in 1933 in different parts of the country by a subcommittee of the Senate Committee on Commerce. *Investigation of So-Called "Rackets": Hearings Pursuant to S. Res. 74,* 73d Cong., 2d Sess. (1933) (1933 Senate Hearings). The hearings explored the difficulties which state law enforcement agencies were experiencing in dealing with interstate crime. One of the frequently mentioned problems was the complicated and inefficient process of state extradition. *See, e.g.,* 1933 Senate Hearings at 177 (statement of Hon. William M'Kay Stillman, Judge of the Criminal Court in Detroit); 210 (statement of John P. Smith, Chief of Police of Detroit, Michigan); 293 (statement of H.D. Harper, Chief of Police of Colorado Springs, Colorado).

During the course of the hearings, Harry S. Toy, the Prosecuting Attorney of Wayne County, Michigan, introduced into the hearing record a legislative proposal which would make interstate flight a federal crime. 1933 Senate Hearings at 198. Mr. Toy was particularly concerned with the problem of fugitive witnesses, to whom most state extradition procedures did not apply.[9] Senator Copeland, who chaired the subcommittee, questioned Mr. Toy closely

---

[9] In 1934, only ten States had enacted statutes providing for the interstate rendition of witnesses in criminal proceedings. *See* Commissioner's Prefatory Note to 1936 Revision of Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Proceedings, 11 U.L.A. 2 (1974).

about the possibility whether, under the legislation he had proposed, "a witness brought back by the Federal court might then be turned over to the State court for such action as it proposes." *Id.* at 199. He was concerned that Mr. Toy's proposed legislation would be held unconstitutional because it would "evade the extradition clause of the Constitution to bring this man back into the jurisdiction of the Federal court," only to "serve the papers upon him for action in the State court." *Id.* at 204.[10] Senator Vandenburg disagreed on the constitutionality of the proposed legislation. Significantly, however, both Senators believed that the legislation would permit federal return of a fugitive felon or witness for state prosecution.

On January 11, 1934, Senator Copeland introduced Mr. Toy's proposed legislation, with certain changes in its venue provisions.[11] In his floor statement, he again expressed his reservations about the constitutionality of a bill which would permit the "circumvention" of state extradition procedures:

> [Senator Vandenburg] thinks he sees in this an opportunity to help the State courts . . . . He hopes that a witness to a crime against the State law may, by the operation of this proposed law, be brought back by the United States district court, and then, when the witness is returned and within the jurisdiction of the State court, that he may be turned over to the State court for the benefit of the State authorities in carrying on the prosecution. Of course, I do not think that can be done . . . .

78 Cong. Rec. 453 (1934). The Attorney General, in comments on the bill prepared for the House Committee on the Judiciary, appeared to explain that the bill would assist the States in providing an alternative to extradition to secure the return of fugitives:

> This bill will not prevent the States from obtaining extradition of roving criminals but the complicated process of extradition has proved to be very inefficient . . . . By an amendment in the Senate this bill was clarified to assure that the defendant shall be tried only where the 'original crime is alleged to have been committed.

H.R. Rep. No. 1458, 73d Cong., 2d Sess. 1–2 (1934).

The "amendment in the Senate" to which the Attorney General referred was an addition to the bill's venue provisions made on the floor of the Senate. Senator Steiwer had expressed concern about whether the venue provisions in

---

[10] It is not clear whether Senator Copeland's constitutional concern related to possible rights of States under the Extradition Clause, or to the possible right of an individual to be extradited, or to both. Charles F. Boots, Legislative Counsel to the Senate, who also commented for the record on the constitutionality of Mr. Toy's draft legislation, was concerned that "such procedure could well be challenged as withholding from the defendant the right to a speedy trial on the Federal charge." 1933 Senate Hearings at 200–03.

[11] The venue provisions in Mr. Toy's bill would have permitted federal prosecution in any federal district "from, through, or into which any person shall flee." 1933 Senate Hearings at 1989. The analogous provisions of S. 2253 limited venue to the "Federal judicial district in which the crime was committed."

the bill as originally introduced could be construed to require trial on the federal charges in the district where the fugitive was apprehended. Senator Copeland agreed to a clarifying amendment, explaining that the bill's purpose, at least in the case of fugitive witnesses, was to facilitate state prosecutions by securing their return to the jurisdiction from which they had fled:

> Of course the State could make it a felony for a witness to flee the jurisdiction of the court, but the State would have no power to bring the witness back. In this case, however, if he is an important witness to a murder, or to a gang operation, and flees to another State, he becomes guilty of a felony, *and may be brought back by the district court or by the Federal Government.* So there can be no doubt that in apprehending criminals and in bringing them to book this is an important bill, and one which should be passed.

78 Cong. Rec. 5736 (1934) (emphasis added). Senator Steiwer responded that "I think the purpose just explained by the Senator is a very proper purpose," and that "I agree thoroughly that the accused ought to go back to the State from which he flees . . . ." *Id.* at 5936–39.

The foregoing legislative history indicates that the sponsors of the 1934 Act expected that it could be used to assist state authorities by securing the return of fugitives. Although existing state rendition procedures might have been available to obtain the return of fugitives from another State's criminal justice system, those procedures were often "inefficient," and in any event did not always apply to fugitive witnesses. To be sure, there was disagreement among the sponsors of the bill as to how far federal law enforcement agencies could constitutionally go in "assisting" the States in this regard, if state extradition procedures were otherwise available. But there seems little doubt that its sponsors intended the bill which passed in 1934 to authorize federal removal to the extent constitutionally permissible.[12]

## B. The 1961 Amendments to § 1073

In 1961 the Kennedy administration proposed amendments to the Fugitive Felon Act which brought within its scope all felonies or offenses punishable under state law by more than one year in prison.[13] *See* Pub. L. No. 87–368, 75 Stat. 795 (1961). The purpose of the amendments was to "permit the Federal government to give greater aid and assistance to the States." *The Attorney General's Program to Curb Organized Crime and Racketeering: Hearings*

---

[12] There is no suggestion in the legislative history of the 1934 Act that Congress considered the scope of a federal court's authority and obligation to order a federal prisoner's commitment to another district under then-existing law. In 1934, federal removal was governed by the provisions of 18 U.S.C. § 591, which made it the "duty" of a federal court to execute a warrant for a prisoner's removal "to the district where the trial is to be had." *See* 18 U.S.C. § 591 (1934)

[13] As originally enacted, the Fugitive Felon Act applied only to specifically enumerated crimes. *See* S. Rep. No. 586, 87th Cong., 1st Sess. 2 (1961).

*Before the Senate Comm. on the Judiciary,* 87th Cong., 1st Sess. 15 (1961) (1961 Senate Hearings) (testimony of Attorney General Kennedy). *See also Legislation Relating to Organized Crime: Hearings Before a Subcomm. of the House Comm.* on the Judiciary, 87th Cong., 1st Sess. 42 (1961) (1961 House Hearings) (the purpose of the amendments is "to help ánd assist the States").

The legislative history of the 1961 amendments reflects Congress' expectation that the law, as amended, would "provide either for Federal trials of the persons apprehended or their *return to the proper State jurisdiction for prosecution or other appropriate State action.*" H.R. Rep. No. 827, 87th Cong., 1st Sess. at 2 (1961) (1961 House Report) (emphasis added). *See also id.* at 7 (expressing concern that, should the category of covered state crimes be expanded, "State officials would ask for Federal help in seeking the return of every one of these fugitives, especially since the request would relieve the State of costs") (minority views of Rep. Libonati).

Both the House and Senate Reports referred with approval to the Justice Department's then-existing enforcement policy. They also noted that "the Department of Justice does not anticipate that its established practice under existing law will be altered by the proposed broadening of the Fugitive Felon Act." S. Rep. No. 586, 87th Cong., 1st Sess. 2 (1961). *See also* 1961 House Report at 2. *Inter alia,* that policy "require[d] the approval of an appropriate Assistant Attorney General before an indictment or a Federal removal proceeding may be instituted." *See* Letter from Deputy Attorney General Byron R. White (Aug. 23, 1961), *reprinted in* 107 Cong. Rec. 15757 (1961) (House); *id.* at 19240 (Senate).[14]

During the debates on the bill in the House, there were several unsuccessful attempts to write certain aspects of the Department's practice into the law itself. The consensus of the House members, however, was it would unnecessarily hamper federal law enforcement efforts to attempt to legislate the details of what was regarded as a successful experiment in federal-state cooperation. Thus, for example, the House rejected an amendment which would have limited the issuance of a federal complaint under the statute to situations in

---

[14] It would appear that, at least prior to 1961, the Department interpreted the Fugitive Felon Act to permit the use of federal removal procedures to secure the return of a fugitive for state prosecution:

> Having once apprehended a fugitive defendant or witness the Department has solved the first problem for the local prosecutor who can then follow the well- established rendition procedure. *Should this fail for a variety of reasons the way is still open to remove the fugitive under Federal process and return him to the jurisdiction where the original crime was committed. There the federal government could turn him over to state authorities or try him under the Fugitive Felon law, or both.*

> From the debates in Congress it is evident that uppermost in the minds of some Senators was the thought that the Act would operate to secure the return of the fugitive felon or witness. The venue provision alone makes that plain and it was agreed that such return was a proper purpose.

Memorandum from M.H. Helter, Head, Common Crimes Unit to F.X. Walker, Chief, General Crimes Section (June 21, 1951) (emphasis added). *See also* Memorandum from Theron Caudle, Assistant Attorney General, Criminal Division to S.A. Andretta, Administrative Assistant to the Attorney General, re: "Expenses of Transporting Prisoners under Fugitive Felon Act who are Turned over to State Authorities for Prosecution" (Apr. 4, 1947). In *United States ex rel. Mills* v. *Reing,* 191 F.2d 297, 300 (3d Cir. 1951), the court referred to the government's concession during argument that "there have been cases where [§ 1073 defendants] . . have been removed to the federal district of indictment and then surrendered forthwith to state custody."

which a state prosecution had already been commenced. 107 Cong. Rec. at 15767–71 (1961).

On the other hand, Congressman Libonati was successful in adding to the venue provisions of the statute a requirement that violations of the Act could be prosecuted only upon the formal written approval of the Attorney General or Assistant Attorney General. *See* 107 Cong. Rec. 15767 (1961). The amendment by which this was effected was not the subject of any extended discussion on the floor, but appears to have been responsive to the desires of several House members to give a statutory framework to existing Justice Department enforcement policy.

During the House debates, several Congressman referred specifically to the use of federal removal procedures in § 1073 cases. Acknowledging that most fugitives apprehended under § 1073 were returned through state extradition procedures, they appear to have assumed that federal removal procedures had been, and could continue to be, used to bring back fugitives for prosecution by state authorities. For example, Rep. Corman stated:

> It appears from the committee report and the letter of the Department that the Fugitive Felon Act is used primarily as an expeditious means of apprehending fleeing criminals to be returned to the scene of their alleged crime for prosecution. It further seems apparent that in those instances when this mission is accomplished and State authorities do prosecute that the Federal Government refrains from prosecution. I see no violence to justice under such procedure.

107 Cong. Rec. at 15771 (1961). *See also id.* at 15761 (objecting to the use of § 1073 to bring back fugitive witnesses to States which had not yet adopted interstate rendition procedures for securing the return of witnesses) (remarks of Rep. Whitener). In the Senate, there was some concern expressed that States would attempt to use the federal removal process to secure the return of fugitives in cases raising civil rights issues, where extradition was not likely to succeed. *See id.* at 19242 (referring to alleged "misapplication" of the Act "in cases involving civil rights matters") (remarks of Sen. Keating).

In summary, the legislative history of the 1961 amendments to § 1073 indicates no intention on the part of Congress to remove any part of the authority given federal law enforcement agencies under the 1934 Act. And, although Congress expressed its approval of the existing Department of Justice policies on enforcement of the Act, it resisted most proposals to write those policies into the statute itself. The sole statutory limitation placed on federal enforcement activities by the 1961 amendments was the requirement of formal Department of Justice approval for "prosecution" of a violation. There is no indication in the legislative history of the 1961 amendments that Congress considered the potential applicability of this requirement to different phases of a prosecution. Nor is there any evidence that Congress intended to limit the

86

Department's discretionary authority to approve removal to those cases in which a federal indictment would subsequently be sought.

## III. Judicial Precedents Relating to Federal Removal of a § 1073 Defendant in Aid of a State Prosecution

Although several courts have referred in dictum to the government's authority to return a § 1073 defendant in aid of a state prosecution, only two cases have directly considered and ruled upon the availability of federal removal procedures for this purpose.[15] In *Wright* v. *Cartier,* 10 F.R.D. 21 (D. Mass. 1950), an escapee from a Georgia prison was arrested in Massachusetts on a federal § 1073 warrant issued by the district court in Georgia. He was brought before a federal commissioner in Massachusetts, his identity was determined and probable cause found, and he was "ordered returned to the State of Georgia." 10 F.R.D. at 22. The defendant filed a writ of habeas corpus, charging that § 1073 was unconstitutional, "not because of its express provisions or purpose, but because of its mode of operation with regard to him." *Id.* Specifically, he charged that:

> the federal authorities never prosecute under the federal statute, but simply turn over the fugitive to the state authorities for prosecution under the state statute with the violation of which he is charged. Petitioner contends that for members of the Negro race this results in a deprivation of the opportunity at an extradition hearing to allege that the fugitive will not be given a fair trial in the state seeking extradition and to petition exercise of executive clemency in the state of refuge to prevent his return for trial.

*Id.* at 22–23. The court refused to rule on the statute's constitutionality in the context of a habeas proceeding, however, stating that "if this petitioner makes demand upon the United States Court in Georgia for his prosecution so that he may there test the constitutionality of the Fugitive Felon Act, the Court will be open to him." *Id.* at 23.

In *United States* v. *Love,* 425 F. Supp. 1248 (S.D.N.Y. 1977), a fugitive from a North Carolina murder charge, arrested in New York on a federal § 1073 warrant, attempted to avoid being turned over to New York authorities by invoking removal procedures himself under Rule 40. The federal magistrate

---

[15] *See United States* v. *Thurman,* 687 F.2d at 13 (one of "the primary purposes of the venue section of § 1073 is to return the felon to the state where the original flight occurred in order to assist state officials in combating organized crime there"); *United States* v. *McCarthy,* 249 F. Supp. 199, 203 (E.D.N.Y. 1966) ("the 1961 amendment did not diminish the power of the federal government to return the fugitive felon for state prosecution"); *Hemans* v. *United States,* 163 F.2d at 240 ("if Congress regarded it as a duty to aid the states in bringing back to their local jurisdictions fugitives from justice, or essential witnesses, that power exists"); *United States* v. *Miller,* 17 F. Supp. at 67 ("The right of extradition guaranteed to the states by the federal government becomes too slow as a vehicle for swift punishment of criminals, and oftentimes any punishment at all.")

refused to issue the warrant, and directed the federal authorities to release the fugitive to New York authorities for extradition. On review of the magistrate's order, Judge MacMahon held that

> removal under Rule 40 is inappropriate in this case, for it would result in the circumvention of valid state extradition laws as well as unnecessary and extraordinary expense to the government in the transportation of prisoners throughout the country.

425 F. Supp. at 1250. Judge MacMahon's holding appears to be based on his reading of the 1961 amendments to § 1073, which added to the statute the requirement of written Department of Justice approval for any § 1073 prosecution. He noted that Congress had been "aware" of existing departmental enforcement practices when it amended § 1073 in 1961, and had "reinforced" them by writing into the statute itself the requirement of written approval. 425 F. Supp. at 1249.

Notwithstanding some *dicta* that suggest a somewhat broader holding,[16] the *Love* opinion holds no more than that it would be "inappropriate" for a court to order removal in a § 1073 case except in accordance with established Department of Justice policies.[17] Because in *Love* the federal defendant himself had sought to invoke Rule 40, apparently without the support of any federal official, the removal order would not be issued.[18] No court has directly ruled upon whether the requirement of formal written approval added to § 1073 in 1961 extends to removal as well as to subsequent stages in a federal prosecu-

---

[16] Judge MacMahon's reference to a defendant's "right to formal extradition proceedings," 425 F. Supp. at 1250, is discussed in Part IV below.

[17] Judge MacMahon did not invoke the principle that a court may in its discretion refuse to order removal under Rule 40 whenever "special facts were disclosed that seemed to make questionable the propriety of removal." *United States* v. *Johnson*, 63 F. Supp. at 616. *See supra* note 6. However, his use of the term "inappropriate" suggests that he regarded his refusal to order removal as an exercise of discretion rather than required by law.

[18] This reading of the *Love* opinion is consistent with Judge MacMahon's citation of *Wright* v. *Cartier* and *Moore's Federal Practice*. 425 F. Supp. at 1249. At the cited page in *Moore's*, the *Wright* case is relied upon as authority for the following proposition:

> If the fugitive is willing to waive a removal hearing, or the government has sufficient evidence available to prove probable cause, the fugitive may presumably be returned to the demanding state by way of removal under Rule 40, rather than by way of extradition.

8B *Moore's Federal Practice* ¶ 40.04 at 40–23 (1980). In one recent case, a defendant convicted under § 1073 sought unsuccessfully to invoke the *Love* case in support of his argument that his removal under Rule 40 had violated his constitutional right to formal extradition under state law. *United States* v. *McCord*, 695 F.2d 823, 826 (5th Cir. 1983). He urged an interpretation of § 1073, and of Judge MacMahon's holding in *Love*, which would preclude Rule 40 removal in any § 1073 case, because the "underlying offense" is a state not a federal offense. The court of appeals rejected this interpretation of § 1073, pointing out that the "underlying offense" is a federal one, and that Rule 40 removal is accordingly "the appropriate procedure" for returning a federal § 1073 defendant to the jurisdiction from which he fled. The court of appeals contrasted McCord's case, in which "the Federal Government sought and intended to prosecute the defendant for violation of § 1073," with the situation in *Love*, in which the government did not seek removal but "merely sought to aid the state in obtaining custody of one of its prisoners." The court in *McCord* did not have before it, and accordingly did not address, the issue whether Rule 40 removal may be available at the request of the Federal Government, where the federal § 1073 charges are not to be pursued upon the defendant's return to the State from which he fled.

tion. It has, however, been interpreted by at least two courts not to extend to the issuance of a federal § 1073 complaint or warrant of arrest. *See United States* v. *Diaz,* 351 F. Supp. 1050 (D. Conn. 1972); *United States* v. *McCarthy,* 249 F. Supp. 199 (E.D.N.Y. 1966). Although neither case required the court to rule on the applicability of the requirement to federal removal, both courts remarked on that issue in *dictum.* In *Diaz,* Judge Newman rejected a construction of the statutory term "prosecution" which would have extended the requirement of written approval to "every step of the criminal process including the issuance of an arrest warrant." 351 F. Supp. at 1051. He suggested, however, that the requirement of written approval might extend beyond formal indictment to "the preliminary step of a removal proceeding." *Id.* at 1052.

In *McCarthy,* Judge Mishler took a different view of the 1961 amendment:

> It is clear that the amendment was intended to aid local law enforcement agencies apprehend fugitive felons through federal agencies [sic] and return them to the State jurisdiction for prosecution there. Implicit in the language of the report is the intention that federal prosecution for the offense was of secondary consideration. The choice of federal prosecution was therefore withdrawn from the United States District Attorney and lodged with the Attorney General. *The 1961 amendment did not diminish the power of the federal government to return the fugitive felon for state prosecution.*

249 F. Supp. at 203 (emphasis added).

In summary, while judicial precedent confirms our conclusion that the availability of removal in § 1073 cases does not depend as a matter of law upon whether a federal indictment will subsequently be sought, it is less clear whether a court will require formal written Justice Department approval before issuing a removal order.

## IV. The Extradition Clause of the Constitution

Having concluded that federal removal in aid of a state prosecution is authorized by the Fugitive Felon Act, we turn to the Criminal Division's concern that such removal might be inconsistent with some federal constitutional or statutory right of a fugitive to extradition under state law. We also discuss what federal constitutional or statutory rights, if any, the States themselves may have in connection with federal removal of a § 1073 defendant.

### A. Rights of a § 1073 Defendant With Regard to Extradition

The Supreme Court has consistently interpreted the Extradition Clause of the United States Constitution, U.S. Const. art. IV, § 2, cl. 2, to confer no rights on individuals. Its sole purpose is to benefit the States. *See, e.g., Michigan* v.

89

*Doran*, 439 U.S. 282, 287 (1978); *Biddinger* v. *Commissioner of Police of New York*, 245 U.S. 128 (1917).[19] And, the procedural safeguards provided to individuals in state extradition statutes have been held by the Supreme Court to be inapplicable to persons charged with a federal crime who are otherwise properly subject to removal under Rule 40. *See United States ex rel. Kassin* v. *Mulligan*, 295 U.S. 396 (1935); *United States ex rel. Hughes* v. *Gault*, 271 U.S. 142 (1926); *United States* v. *Guy*, 456 F.2d 1157 (8th Cir. 1972).

Federal removal under Rule 40 or its statutory predecessors has been held proper in several § 1073 cases, in the face of a defendant's claim that he was constitutionally entitled to be processed under state extradition laws. *See, e.g., United States* v. *McCord*, 695 F.2d at 826 (Rule 40 removal appropriate because "underlying offense" a federal one); *Lupino* v. *United States*, 185 F. Supp. at 368 ("Congress, not the states, has established the punishable offense, and it is, therefore, federal, not state, arresting and removal process which is relevant."); *United States* v. *Miller*, 17 F. Supp. at 68 (federal removal of a § 1073 defendant does not "interfere[] with the right of extradition of a criminal from a state to which he has fled to one where the crime was committed.").

There is *dictum* in the court's opinion in *United States* v. *Love*, 425 F. Supp. at 1250, which suggests that a federal § 1073 defendant, returned to the custody of state authorities under federal process, may have some "right to formal extradition," deprivation of which could be raised by him in the context of his state prosecution. The court did not, however, indicate what the source of that right might be. It is possible that under the laws of some States, a defendant could claim an entitlement to be brought within the jurisdiction of its courts in a particular manner. *Cf. Ker* v. *Illinois*, 119 U.S. 436, 444 (1886). We have not examined that issue, and express no opinion on it.[20] However, an individual has no "right to formal extradition" under the federal Constitution or under any federal statute of which we are aware.[21]

## B. *Rights and Obligations of the States in Connection with Extradition*

Although a § 1073 defendant can claim no entitlement to be extradited deriving from the Extradition Clause of the Constitution, the rights and obligations of the States themselves under that provision must be recognized when-

---

[19] The Extradition Clause provides:

A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

[20] Perhaps the demanding State's requirements in this regard would therefore be a valid consideration for the Department in determining whether to give approval under § 1073 for removal in any particular case.

[21] The Uniform Criminal Extradition Act has been adopted by a majority of the States, but has no independent force as federal law. Where applicable, its due process protections can be enforced by suits under the Fourteenth Amendment. *See Cuyler* v. *Adams*, 449 U.S. 433 (1981). By their terms, however, the protections in the Uniform Criminal Extradition Act apply only to a person arrested on a warrant signed by the Governor of the asylum State. *See* §§ 7, 10.

ever federal removal is proposed in any § 1073 case. It is all the more important to do so whenever federal removal is intended simply to facilitate a state prosecution.

The Extradition Clause imposes upon the executive authority of each State an obligation, on the demand of another State, to "deliver up" a fugitive from that other State's justice. *See supra* note 19. The right given a State to demand is an "absolute" one, and implies a "correlative obligation to deliver, without any reference to the character of the crime charged, or to the policy or laws of the State to which the fugitive has fled." *Kentucky* v. *Dennison*, 65 U.S. (24 How.) 66, 103 (1861). "The duty of the Governor of the State where the fugitive was found is, in such cases, merely ministerial, without the right to exercise either executive or judicial discretion." *Id.* at 104. However, the Clause and its federal implementing statute, 18 U.S.C. § 3182, have been characterized as merely "declaratory of a moral duty," because neither provides "any means to compel the execution of this duty." *Id.* at 107. *See also Taylor* v. *Taintor*, 83 U.S. (16 Wall.) 366, 370 (1872). Accordingly, the federal courts have no power to compel authorities in one State to surrender a fugitive to those of another. *See also South Dakota* v. *Brown*, 20 Cal. 3d. 765, 772, 576 P.2d 473 (1978) (state courts have no power under state extradition laws to "control executive discretion in extradition matters.").[22]

Even if, under existing law, a State's duty under the Extradition Clause cannot be enforced directly by a federal court, it does not follow that the Extradition Clause gives States an affirmative right to refuse or delay extradition. Indeed, the history of the Extradition Clause itself suggests that any such claimed right would be inconsistent with the Framers' intention "to preserve harmony between States, and order and law within their respective borders." *See Kentucky* v. *Dennison*, 65 U.S. at 101–03. Accordingly, the Extradition Clause gives a State no basis for resisting otherwise constitutional federal efforts to assist another in obtaining custody of a fugitive who has sought refuge within its borders. *Cf. Prigg* v. *Pennsylvania*, 41 U.S. (16 Pet.) 539, 612 (1842). The Fugitive Felon Act, with its provisions for apprehending and returning fugitives who have fled from one State to another, cannot therefore be challenged as an unconstitutional intrusion on some hypothetical "right" of one State to give asylum to another's fugitives, or otherwise control the process of extradition.[23] In fact, far from an intrusion, this statute provides, in effect, a federal means of enforcing the mandatory duty imposed upon States by the

---

[22] In *Kentucky* v. *Dennison,* the Supreme Court held that a federal court could not issue a writ of mandamus to compel the Governor of Ohio to surrender a fugitive indicted in Kentucky for assisting a slave to escape: "the Federal Government, under the Constitution, has no power to impose on a State officer, as such, any duty whatever, and compel him to perform it." 65 U.S. at 107. Dissenting in *South Dakota* v. *Brown,* Justice Mosk observed that "[t]here is serious question whether the rigid federalism of *Dennison* would be followed today when a constitutional issue is involved." 20 Cal. 3d at 781 n.1 (citing *Brown* v. *Board of Education,* 349 U.S. 294 (1955) and *Green* v. *County School Bd.,* 391 U.S. 430 (1968)).

[23] In any event, we think it unlikely that a court would permit a defendant to rely upon any right belonging to the asylum State as a defense to prosecution in the demanding State. *See United States* v *Miller,* 17 F. Supp. at 68.

Extradition Clause.[24] This is not to say that the Fugitive Felon Act was intended to provide a routine substitute for state extradition procedures. The legislative history of the 1934 Act and its 1961 amendments makes clear that Congress did not intend the Act to supplant state extradition procedures. Congress was concerned not only with the possible federal intrusion in an area historically left to the States, but also with the financial burden which frequent use of federal removal procedures would place on the Federal Government. Thus, Congress appears to have contemplated that federal removal procedures would be used only in those rare situations where interstate rendition procedures would not be effective in bringing the fugitive to justice.

The statute's intended deference to state extradition procedures requires that federal removal be used very sparingly in § 1073 cases. Accordingly, federal removal of a § 1073 defendant should not be sought routinely, or when state extradition procedures are determined to be adequate to accomplish the defendant's return for prosecution or other appropriate disposition by the demanding State. The important policy considerations involved in making such a determination simply underscore the wisdom of requiring formal departmental approval of any request for removal in a § 1073 case. Factors to be considered in making this determination could include whether the extradition process will be likely to deliver the defendant to the demanding State in a timely fashion; whether the interest of the demanding State in obtaining return of the fugitive is sufficiently strong to warrant using federal resources for this purpose; and whether the federal interest in the particular case is sufficiently strong to overcome whatever interest the asylum State may have in implementing its own extradition procedures. In a case in which extradition has been refused, the Department should consider whatever findings the asylum State's Governor has made which caused him to make such a refusal.

## V. Payment of Expenses of Transporting
### Defendants Under § 1073

The United States Marshal has the authority and responsibility to execute a federal court order directing that a prisoner in federal custody be transported to another district. 28 U.S.C. § 567; 28 C.F.R. § 0.111j. Appropriated funds are available for this purpose. See Pub. L. No. 96–68, Title II, 93 Stat. 416, 420 (1979). These funds are available for the court ordered transportation of § 1073

---

[24] If the integrity of an asylum State's extradition procedures were guaranteed by the Extradition Clause, we doubt that the venue provisions of § 1073 could have withstood constitutional challenge. Those provisions in effect require circumvention of state extradition procedures insofar as they lead, sooner or later, to the fugitive's return by federal process to the custody of authorities in the State from which he fled. Whether the government wins or loses its § 1073 prosecution, the defendant is subsequently made to answer in state court for the state crime. See United States v. Miller, 17 F. Supp. at 68. We see no reason why this constitutional issue would depend upon whether a federal prosecution preceded the fugitive's being turned over to state authorities. The federal interest would appear to be as great, and that interest would appear to be equally served, and perhaps in a fairer way to defendants, when the federal government chooses to decline prosecution for what is essentially a derivative crime, in deference to the demanding State's disposition of the fugitive under state law.

prisoners to the same extent that they are available for the transportation of other federal prisoners.

The State seeking the return of the § 1073 defendant could voluntarily reimburse the United States for expenses incurred by the U.S. Marshal in connection with transportation in this situation. *See United States* v. *Burnison*, 339 U.S. 87, 90 (1950).[25] However, the Marshal could not recoup his own expense from any such reimbursement, because an agency may not augment its appropriations without specific statutory authority. *See* 49 Comp. Gen. 572 (1970); 5 Comp. Gen. 289 (1925). *See generally* General Accounting Office, *Principles of Federal Appropriations* Law, ch. 5, subpart C (1982). With a few exceptions apparently not applicable here, any money an agency receives for the use of the United States from a source outside the agency must be deposited in full into the general fund of the Treasury. *See* 31 U.S.C. § 3302b (formerly 31 U.S.C. § 484). *See also* 46 Comp. Gen. 31 (1966). Once money has been deposited into the general fund, there must be an appropriation to permit its expenditure. *See* 3 Comp. Gen. 599, 600 (1923). The Marshal is not authorized to accept gifts of money for his own use, nor is he otherwise authorized to accept reimbursement for expenses incurred in carrying out his authorized functions. Thus, any funds received from a State for the interdistrict transportation of prisoners would therefore have to be deposited in the general fund of the Treasury.[26]

## Conclusion

A federal § 1073 defendant may in appropriate circumstances be removed by federal process to the jurisdiction from which he fled in aid of a state prosecution. Accordingly, a prosecutor may seek removal, and a court may order it, even if the government does not intend to pursue the federal charges against the defendant once he has been returned. On the other hand, because § 1073 is not intended to supplant state law procedures for interstate rendition, removal

---

[25] We have not studied whether the State could be required to reimburse the United States for expenses incurred by the Marshal in this situation, as a condition of the Department's willingness to request removal, and express no views on that issue. We note, however, that the authority to charge a fee for services contained in 31 U.S.C. § 9701 (formerly 31 U.S.C. § 483a), the so-called "user fee statute," has been held inapplicable to state and local governments and agencies thereof. *See Beaver, Bountiful, Enterprise* v. *Andrus*, 637 F.2d 749 (10th Cir. 1980). The Intergovernmental Cooperation Act of 1968 provided a mechanism whereby governmental agencies can recover the cost of certain "specialized or technical services" provided to State and local entities. *See* 42 U.S.C. §§ 4222, 4223 (1976). These provisions were amended and reenacted in 1982 as part of Title 31. *See* 31 U.S.C. § 6505. Services may be provided, however, only if "prescribed by the President." *Id.* § 6505(b).

[26] Although the Marshal may not accept cash reimbursement without implicating the rule against augmentation of appropriations, it is possible that all or part of the personnel costs of transporting federal § 1073 prisoners could be defrayed by deputizing state law enforcement officers to assist the Marshal in carrying out this function. Under 28 C.F.R. § 0.112, the Director of the U.S. Marshals Service is authorized to make such deputations "whenever the needs of the U.S. Marshals Service so require." *See also* 28 U.S.C. § 569(b) (conferring authority on U.S. Marshals to "command all necessary assistance to execute their duties"). Although 31 U.S.C. § 665(b) prohibits the acceptance of voluntary services for the United States, this provision has been construed not to prohibit the acceptance of services that are truly "gratuitous," *i.e.,* for which no federal compensation is expected. *See* 54 Comp. Gen. 560 (1975).

should not be sought in such circumstances unless it is clear that state procedures are inadequate to the task of returning the fugitive.

Although it is unclear whether § 1073's requirement of formal written Department of Justice approval applies in connection with such removal, it is possible that a court would not be willing to issue a Rule 40 order unless such approval had been given. Accordingly, we believe the Criminal Division's policy of requiring departmental approval of all requests to remove represents the safer course.

Finally, funds appropriated for the authorized activities of the U.S. Marshal may be used to pay the cost of transporting a § 1073 defendant pursuant to a federal court order under Rule 40. All or part of the cost of transportation may voluntarily be borne by the State seeking the fugitive's return, although any monies received from a State must be deposited into the general fund of the Treasury.

RALPH W. TARR
*Deputy Assistant Attorney*
*General Office of Legal Counsel*